1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN EINSTEIN, an individual; EINSTEIN COSMETICS LLC, a California limited liability company; EINSTEIN COSMETICS, LTD., a California corporation,<br><br>          Plaintiffs,<br><br>          vs.<br><br>BABY EINSTEIN COMPANY LLC, a Colorado limited liability company; HEBREW UNIVERSITY OF JERUSALEM, an Israel corporation; and DOES 1-10, inclusive,<br><br>          Defendants. | ) CASE NO. CV 07-02171 MMM (SSx)<br>)<br>)<br>)<br>) ORDER GRANTING<br>) COUNTERCLAIMANT'S MOTION FOR<br>) DEFAULT JUDGMENT AND<br>) PERMANENT INJUNCTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

On April 3, 2007, Benjamin Einstein, Einstein Cosmetics LLC and Einstein Cosmetics, Ltd. ("plaintiffs") filed a complaint against Baby Einstein Company LLC, Hebrew University of Jerusalem ("HUJ"), and certain fictitious defendants. A second amended complaint was filed, pursuant to court order, on February 12, 2008.[1]  HUJ filed an answer and counterclaims on March 11, 2008.[2]

---

[1]Second Amended Complaint ("Complaint"), Docket No. 35 (Feb. 12, 2008).

[2]The Hebrew University of Jerusalem's Answer to the Second Amended Complaint ("Answer") and Counterclaim ("Counterclaim"), Docket No. 48 (Mar. 11, 2008).

On April 29, 2009, the court entered a consent judgment against plaintiffs Einstein Cosmetics LLC and Benjamin Einstein.[3]  HUJ now moves for default judgment on its eight counterclaims against EC Ltd., a suspended California corporation.[4]  No plaintiff opposes HUJ's motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Complaint

As noted, Benjamin Einstein, a principal of EC Ltd. and Einstein Cosmetics LLC (collectively, "Einstein Cosmetics"), commence this action in April 2007.  Plaintiffs alleged that, since at least January 2005, Einstein Cosmetics had engaged in the research, development, and manufacture of lip balm and lip care products, and had marketed and distributed these products throughout the United States and in Europe under the mark "Einstein."[5]  Plaintiffs represented that Einstein Cosmetics had filed a federal trademark application for "Einstein."[6]  They asserted that defendant Baby Einstein had used "Little Einstein" and "Baby Einstein" in conjunction with the sale of cosmetics, baby oils, lotions, and other skin and body products, and that use of these terms was likely to cause confusion among consumers.[7]  The complaint acknowledged that Baby Einstein maintained it was entitled to use the "Einstein" marks under a license obtained from HUJ.[8]  Plaintiffs alleged that HUJ held neither valid trademark nor publicity rights to the

---

[3]See Consent Judgment, Docket No. 107 (Apr. 29, 2009).

[4]Application for Entry of Default Judgment and Permanent Injunction Against Plaintiff and Counter-Defendant Einstein Cosmetics, Ltd. ("Defendant's Motion"), Docket No. 108 (Apr. 29, 2009).

[5]Complaint, ¶ 8.

[6]Id., ¶ 10.  Defendants filed opposition to this application with the United States Patent and Trademark Office ("PTO"), which led to the suspension of plaintiffs' trademark application.  (Id., ¶¶ 15-16.)

[7]Id., ¶ 11.

[8]Id., ¶ 17.

2

1    "Einstein" name.[9]  The complaint pleaded claims for federal trademark infringement; common

2    law trademark infringement; and unfair competition under California law.  Plaintiffs also sought

3    declaratory relief regarding HUJ's purported trademark and publicity rights.

4          **B.     Hebrew University of Jerusalem's Answer and Counterclaims**

5          HUJ answered the complaint and asserted eight counterclaims.[10]  It confirmed that it was

6    a non-profit organization, organized under Israeli law, and asserted that it owned publicity rights

7    in the name and person of Dr. Albert Einstein.[11]  After denying plaintiff's allegations, HUJ

8    asserted that EC Ltd. was subject to dissolution under the terms of a prior settlement agreement

9    reached in a related action, *Benjamin Einstein et al. v. Lawrence Turner, et al.*, Los Angeles

10   Superior Court action, Case No.BC356566.[12]

11         HUJ alleged that it had extensively licensed the Einstein rights, service marks and

12   trademarks to numerous well-known companies around the world.[13]  The counterclaim stated that

13   HUJ owned numerous Einstein and Einstein formative marks ("Einstein marks"), which it

14   contended was prima facie evidence of its exclusive right to use the marks in commerce.[14]  HUJ

15   asserted that the Einstein mark for which plaintiffs had applied was confusingly similar to HUJ's

16   marks, and that the categories of goods and services listed in the application were related to goods

17   and services provided by HUJ and/or its licensees, to goods and services into which HUJ intended

18

19   _____

20         [9]*Id.*, ¶ 18.

21         [10]Plaintiffs answered the counterclaims on April 2, 2008 (Docket No. 50).

22         [11]Answer, ¶ 4.  HUJ explained that, in his last will and testament, Einstein transferred all
23   right, title and interest in any publicity rights in his name and likeness, service marks, and
     trademarks to HUJ.  (Counterclaim, ¶ 10.)

24
25         [12]Counterclaim, ¶ 4.

26         [13]*Id.*, ¶ 11.  HUJ contended that the "breadth of licensing across various classes of goods
     and services resulted in Forbes Magazine ranking Albert Einstein as the 5th highest earning
27   deceased celebrity."  (*Id.*, ¶ 12.)

28         [14]*Id.*, ¶ 14.

to expand, or to goods and services that consumers believed HUJ offered[15]  As evidence of plaintiffs' infringing activities, HUJ referenced the federal trademark applications plaintiffs had filed for "Einstein," "Einstein Lip Therapy," and "Einstein Lip Theory."[16]  HUJ alleged that it had filed opposition to the registration of plaintiffs' "Einstein" marks, and noted that the opposition proceeding before the PTO had been suspended pending resolution of this action.[17]

HUJ pled counterclaims for federal trademark infringement; false endorsement (15 U.S.C. § 1125(a)); federal unfair competition (15 U.S.C. § 1125(a)); California unfair competition; federal trademark dilution; California trademark dilution; violation of the California right of publicity of a deceased personality; and violation of the common law right of publicity.

### C.    Procedural History

On January 28, 2009, Cislo & Thomas, LLP ("Cislo & Thomas") filed a motion seeking to withdraw as plaintiffs' counsel of record, asserting that irreconcilable differences had arisen between it and plaintiffs, and that plaintiffs had failed to pay attorneys' fees and costs in a timely fashion.[18]  Plaintiffs did not oppose the motion; defendants, however, filed a "response" on

---

[15]*Id.*, ¶ 15.

[16]*Id.*, ¶ 21.  The PTO denied plaintiffs' application for registration of "Einstein" on September 8, 2006, finding that the proposed mark was merely a surname. (*Id.*, ¶ 22.) On March 19, 2007, the PTO also denied plaintiffs' application for registration of "Einstein Lip Therapy," finding that the mark was confusingly similar to other registered marks. (*Id.*, ¶ 23.) Also on September 8, 2006, the PTO issued an Office Action regarding "Einstein Lip Theory," which stated that there might be a likelihood of confusion between that mark and a prior pending application.  Plaintiffs then abandoned the "Einstein Lip Theory" application. (*Id.*, ¶ 24.)

[17]*Id.*, ¶ 29.

[18]*Id.* at 2.

1    February 6, 2009,[19] to which Cislo & Thomas replied on February 13, 2008.[20]

2        Cislo & Thomas represented that it had approached plaintiffs with recommendations

3    regarding further proceedings, "including advice concerning . . . further fact discovery, moving

4    to compel certain discovery, developing certain expert survey evidence, and other law and motion

5    practice."[21]  It stated that in response, plaintiffs repeatedly delayed critical decisions concerning

6    the case.[22]  As a result, the fact and expert discovery cut-off dates expired without plaintiffs'

7    discovery incomplete.  Cislo & Thomas also referenced a substantial outstanding balance of fees

8    and costs.

9        On February 26, 2009, the court found that there was good cause to permit Cislo &

10   Thomas to withdraw; it further concluded that plaintiffs would not be prejudiced by the

11   withdrawal.[23]  Noting that neither EC Ltd. nor Einstein Cosmetics LLC could proceed *pro se*, the

12   court directed plaintiffs to have any attorney representing them file a notice of appearance no later

13   than March 20, 2009.  The court explained that, if no notice of appearance was filed, it would

14   strike each corporate plaintiff's answer to HUJ's counterclaims and enter its default.  Plaintiffs

15   Benjamin Einstein and Einstein Cosmetics LLC belatedly filed a request to substitute an attorney,

16   which the court granted.[24]  EC Ltd. did not retain new counsel; consequently, its default was

17

18

---

19       [19]See Statement in Response to Cislo & Thomas, LLP's Motion for Leave to Withdraw as
20   Counsel of Record for Plaintiffs; Memorandum of Points and Authorities in Support Thereof,
     Docket No. 62 (Feb. 6, 2009).
21

22       [20]See Cislo & Thomas LLP's Reply to Defendants' Response to Cislo & Thomas LLP's
     Motion for Leave to Withdraw as Counsel, Docket No. 64 (Feb. 13, 2009).
23

24       [21]Motion to Withdraw at 6.

25       [22]*Id.*

26       [23]Order Granting Motion of Cislo & Thomas, LLP to Withdraw as Plaintiffs' Counsel of
     Record, Docket No. 69 (Feb. 26, 2009).
27

28       [24]Docket Nos. 92 and 93 (Apr. 14, 2009); Order on Request for Approval of Substitution
     of Attorney, Docket No. 95 (Apr. 15, 2009).

1    entered by the clerk on April 22, 2009.[25]

2        As noted, Baby Einstein and HUJ entered into a settlement agreement with Benjamin

3    Einstein and Einstein Cosmetics LLC, which led to the entry of a consent judgment against

4    Benjamin Einstein and Einstein Cosmetics LLC on April 29, 2009.  HUJ now seeks entry of

5    default judgment and a permanent injunction against EC Ltd.

6

7                                    **II.  DISCUSSION**

8        **A.    Legal Standard Governing Default Judgment**

9        A court may order default judgment following the entry of default by the court clerk

10   pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.  See *Pepsico v. California*

11   *Security Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002); *Kloepping v. Firemen's Fund*, No.

12   C 94-2684 TEH, 1996 WL 75314, *2 (N.D. Cal. Feb. 13, 1996).  Once default has been entered,

13   the factual allegations of the complaint or counterclaim, except those concerning damages, are

14   deemed to have been admitted by the non-responding party.  See FED.R.CIV.PROC. 8(d); see also,

15   e.g., *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule

16   of law is that upon default the factual allegations of the complaint, except those relating to the

17   amount of damages, will be taken as true" (citations omitted)).  The court must still "consider[,

18   however,] whether the unchallenged facts constitute a legitimate cause of action, since a party in

19   default does not admit mere conclusions of law."  10A Charles Alan Wright, Arthur R. Miller,

20   & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2688, at 63 (1998) (footnote

21   omitted); see also *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir. 1992)

22   ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are

23   not established by default"); *Doe v. Qi*, 349 F.Supp.2d 1258, 1272 (N.D. Cal. 2004)

24   ("[Although] the factual allegations of [the] complaint together with other competent evidence

25   submitted by the moving party are normally taken as true . . . this Court must still review the facts

26   to insure that the Plaintiffs have properly stated claims for relief").

27

28        [25]Default by Clerk, Docket No. 99 (Apr. 22, 2009).

**B.    Compliance with Federal Rule of Civil Procedure 55 and Local Rule 55-1**

Local Rule 55-1 requires that a party moving for default judgment submit a declaration (1) indicating when and against what party default has been entered; (2) identifying the pleading to which default was entered; (3) indicating whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) stating that the Servicemembers Civil Relief Act, 50 App. U.S.C. § 521, does not apply; and (5) confirming that notice has been served on the defaulting party, if required under Rule 55(b)(2).[26]

Defendant has complied with these requirements. EC Ltd. was served with HUJ's answer and counterclaims, as well as with the instant application for entry of default judgment and related papers.[27] The moving papers identify when EC Ltd.'s default was entered, and the pleading as to which default was entered. Defendant represents that EC Ltd. "is a suspended California corporation and is not an infant or incompetent person"; additionally it states that EC Ltd. "does not have any military status," so that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply.[28] The procedural prerequisites to entry of default judgment are thus satisfied. Accordingly, the court turns to the merits of the motion for default judgment.

**C.    Whether the *Eitel* Factors Favor Default Judgment for Defendant**

"The grant or denial of a motion for the entry of a default judgment is within the discretion of the court." *Warner Bros. Entertainment Inc. v. Caridi*, 346 F.Supp.2d 1068, 1071 (C.D. Cal.

---

[26]Rule 55(b)(2) requires service of notice upon the defaulting party if that party has made an appearance in the action. FED.R.CIV.PROC. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing"); see also, e.g., *In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir. 1993) (noting that Rule 55(b)(2) notice "is only required where the party has made an appearance").

[27]See Declaration of Antoinette Waller in Support of Application for Entry of Default Judgment and Permanent Injunction Against Plaintiff and Counterdefendant Einstein Cosmetics, Ltd. ("Waller Decl."), ¶ 15.

[28]*Id.*, ¶ 14.

2004) (citing cases).  In the Ninth Circuit, court must consider the following factors in exercising their discretion: (1) the possibility of prejudice to the moving party; (2) the merits of the counterclaims; (3) the sufficiency of the counterclaims; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether the default was a product of excusable neglect; and (7) the policy favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### 1.    Possibility of Prejudice to Defendant

The first *Eitel* factor considers whether the moving party will suffer prejudice if a default judgment is not entered.  *Pepsico*, 238 F.Supp.2d at 1177; see also *Eitel*, 782 F.2d at 1471-72. Since the facts in defendant's counterclaim are deemed true, the court concludes that defendant would, in fact, suffer prejudice if judgment were not entered.  Absent a default judgment, defendant would be unable to stop EC Ltd.'s future use of the Einstein marks.  Although EC Ltd. is a suspended corporation that has been ordered dissolved, there is no evidence that the entity has, in fact, filed the requisite paperwork to dissolve.[29]  Furthermore, EC Ltd.'s lack of concern for court orders and rules indicates that, absent entry of default judgment, it may continue to act in a way that could damage defendant's interests and business reputation.  This factor, therefore, favors entry of a default judgment.

### 2.    Substantive Merits and Sufficiency of the Claims

The second and third *Eitel* factors assess the substantive merit of the moving party's claims, and the sufficiency of its complaint or counterclaims; they "require that [the movant] state a claim on which [it] may recover."  See *Pepsico*, 238 F.Supp.2d at 1175; see also *Discovery Communications, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d 1282, 1288 (C.D. Cal. 2001).  For

---

[29]According to Antoinette Waller, counsel for HUJ, plaintiffs reported that they had settled a related state court action, *Benjamin Einstein et al. v. Lawrence Turner, et al.* ("the Turner action"), Los Angeles Superior Court Case No. BC356566, in November 2007.  (Waller Decl., ¶ 3.)  Accompanying plaintiffs' notice of settlement was the declaration of attorney Darren A. Manibog, who was representing plaintiffs at that time.  Manibog's stated that, pursuant to the terms of the settlement, EC Ltd. was to be dissolved.  Among the steps that had to be completed before the dissolution was the filing of a final tax return for EC Ltd.  (*Id.*; see also *id.*, Exh. 2 (copies of plaintiffs' notice of settlement and Manibog declaration).)

1  purposes of discussion, the court groups HUJ's counterclaims as follows: (1) federal trademark

2  infringement, false endorsement and federal and state unfair competition; (2) federal and state

3  trademark dilution; and (3) statutory and common law right of publicity.

4              (a)    **Trademark Infringement, False Endorsement, and Unfair**

5                     **Competition**

6           The elements of trademark infringement, false endorsement, and unfair competition claims

7  under the Lanham Act are identical.[30]  See *Affinity Group, Inc. v. Balser Wealth Management,*

8  *LLC*, CV 05-1555 WQH LSP, 2007 WL 1111239, *2 (S.D. Cal. Apr. 10, 2007) ("The elements

9  necessary to establish trademark infringement and unfair competition claims are identical," citing

10  *Brookfield Comm., Inc. v. West Coast Enter. Corp.*, 174 F.3d 1036, 1046 n. 6, 1047 n. 8 (9th

11  Cir. 1999)); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1106-07 (9th Cir. 1992) ("[C]ourts have

12  recognized false endorsement claims brought by plaintiffs, including celebrities, for the

13  unauthorized imitation of their distinctive attributes, where those attributes amount to an

14  unregistered commercial 'trademark.' . . .  Section 43(a) now expressly prohibits, *inter alia*, the

15  use of any symbol or device which is likely to deceive consumers as to the association,

16

17          [30]Likewise, defendant's common law and state law trademark infringement and unfair
18  competition claims are governed by the same legal standards as are the federal claims. See, e.g.,
    *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 861 (1982) ("[T]he purpose of the Lanham
19  Act was to codify and unify the common law of unfair competition and trademark protection,"
    citing S.Rep.No. 1333, 79th Cong., 2d Sess. (1946)); *Entrepreneur Media, Inc. v. Smith*, 279
20  F.3d 1135, 1153 (9th Cir. 2002) ("[A]ctions pursuant to [California Business & Professions Code]
    § 17200 are 'substantially congruent' to claims made under the Lanham Act," quoting *Cleary v.*
21  *News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (first set of internal quotation marks omitted));
22  *Halicki v. Carroll Shelby Intern., Inc.*, No. CV 04 8813 SJO, 2005 WL 5253338, *10 (C.D. Cal.
    Nov. 14, 2005) ("To bring a claim for trademark infringement under the common law or the
23  Lanham Act, the plaintiff must demonstrate . . . three elements, namely: (1) a valid, protectable
24  mark; (2) the defendant's use of the mark; and (3) the likelihood of consumer confusion," citing
    *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004)); *Halo Management, LLC*
25  *v. Interland, Inc.*, 308 F.Supp.2d 1019, 1027 n. 10 (N.D. Cal. 2003) ("[f]ederal trademark
26  infringement and state unfair competition are . . . coextensive: Where a likelihood of confusion
    has been established for infringement purposes, it has been established for unfair competition
27  purposes as well," citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir.
28  1988)).

sponsorship, or approval of goods or services by another person. . . .  In light of persuasive judicial authority and the subsequent congressional approval of that authority, we conclude that false endorsement claims . . . are cognizable under section 43(a)" (footnotes and citations omitted)).[31]

Under both § 32 and § 43(a), the moving party "must 'prove the existence of a trademark and [its] subsequent use by another in a manner likely to create consumer confusion.'" *Affinity Group*, 2007 WL 1111239 at *2 (quoting *Comedy III Prod., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000)); see also, e.g., *Custom Mfg. and Engineering, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) ("To establish a prima facie case under § 1125(a), [the movant] must show (1) that [it] had enforceable trademark rights in the mark or name, and (2) that the [opposing party] made unauthorized use of it 'such that consumers were likely to confuse the two,'" quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)); *Microsoft Corp. v. Evans*, CV 06-1745 AWI SMS, 2007 WL 3034661, *3 (E.D. Cal. Oct. 17, 2007) ("It has been held that in order to prevail on [a claim under § 32], the [movant] must establish a protected interest in the thing infringed as well as a likelihood of consumer confusion; registration is prima facie evidence of a protected interest, and establishing that a substantial segment of consumers and potential consumers have mentally associated the mark and a single source of the product is also sufficient," citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354-55 (9th Cir. 1985)).

### (i)    Ownership of the Mark and Unauthorized Use in Connection with Commerce

Registration of a mark is "prima facie evidence of the validity of the registered mark[,] . . . of the registrant's ownership of the mark, and . . . [of the] exclusive right to use the registered

---

[31]"Federal trademark infringement claims under § 32 of the Lanham Act apply to registered marks, while unfair competition [and false endorsement] claims under § 43(a) of the Lanham Act apply to both registered and unregistered marks and protect against a wider range of practices." *Affinity Group*, 2007 WL 1111239 at *2 (citing *Brookfield Comm., Inc.*, 174 F.3d at 1046-47; 15 U.S.C. § 1114; 15 U.S.C. § 1125(a)(1)).

mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115(a); *Brookfield Comm. Inc.*, 174 F.3d at 1047 (party's "registration of the mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of exclusive right to use the mark on the goods and services specified in the registration").   The burden then shifts to the opposing party to rebut the presumption of ownership.  See, e.g., *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use.  To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services. . . . When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark.  Lanham Act § 7(b), 15 U.S.C. § 1057(b); Lanham Act § 33(a), 15 U.S.C. § 1115(a).  Therefore, the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence" (citation omitted)).

HUJ alleges that it owns numerous Einstein and Einstein formative marks.  As examples, it references U.S. Registration No. 2,599,880, International Class 9, for "The Ultimate Einstein" (for use in connection with "interactive educational CD-ROMs, in the [field] of history, sold individually and together as a unit with history books and instructional manuals therefor") and U.S. Registration No. 1,479,104, International Class 42, for "Einstein" (for use in connection with "providing access to an online computer database for use by high school students and teachers").[32]  HUJ contends, with justification, that the Einstein mark for which EC Ltd. applied is confusingly similar to its Einstein marks.  It is also apparent that the goods EC Ltd. developed, marketed, and sold – namely, lip care products – are related to and easily confused with the baby and skin care products marketed and sold by HUJ's licensee, Baby Einstein.  HUJ maintains that the mark EC Ltd. seeks to register connotes an affiliation with or connection to Albert Einstein,

---

[32]Defendant's Motion at 7 (quoting Counterclaim, ¶ 14).

1    and that it falsely suggests a connection and association with, or sponsorship by HUJ.[33]  Finally,

2    HUJ argues that the manner in which EC Ltd. promoted and marketed its lip care products was

3    calculated to cause consumer confusion and to "trade on" the Albert Einstein association; for

4    example, EC Ltd. promoted its lip balm as the "smarter way" to care for lips, developed by the

5    "ingenious" mind of Benjamin Einstein as a "revolutionary and intelligent" method of lip care.[34]

6          Because it is in default, EC Ltd. has adduced no evidence overcoming the presumption of

7    ownership created by these facts.  Accordingly, the court concludes that HUJ has established

8    ownership of the Einstein mark.  Likewise, the facts pleaded in defendant's counterclaim establish

9    that EC Ltd. used the Einstein trademark in connection with the production of lip care products

10   that it promoted and sold to the consuming public.  This suffices to establish the second element

11   of a federal trademark infringement claim – unauthorized use of the mark in commerce.

12                              **(ii)    Likelihood of Confusion**

13         "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the

14   marketplace is likely to be confused as to the origin of the good or service bearing one of the

15   marks." *Dreamwerks Production Group, Inc. v. SKG Studio, d/b/a Dreamworks SKG*, 142 F.3d

16   1127, 1129 (9th Cir. 1998) (footnote omitted).  Typically, "[l]ikelihood of confusion is a factual

17   determination . . . made using an eight factor test." *Phillip Morris USA Inc. v. Shalabi*, 352

18   F.Supp.2d 1067, 1073 (C.D. Cal. 2004).  The relevant factors include (1) the strength of the

19   mark; (2) the proximity or relatedness of the goods; (3) the marks' similarity in appearance,

20   sound, and meaning; (4) evidence of actual confusion; (5) the degree to which the parties'

21   marketing channels converge; (6) the type of goods at issue, and the degree of care customers are

22   likely to exercise in purchasing those goods; (7) evidence of the opposing party's intention in

23   selecting and using the allegedly infringing mark; and (8) the likelihood that the parties will

24   expand their product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979),

25   _____

26         [33]*Id.* at 7-8 (citing Counterclaim, ¶¶ 15-17).

27         [34]*Id.* at 9-10.  Defendant has submitted copies of EC Ltd. promotional materials, which
     also include the statement "Need help with chapped, peeling lips?  It doesn't take a rocket scientist
28   – just Einstein!"  (Waller Decl., ¶ 12; *id.*, Exh. 8.)

                                        12

1    abrogated in part on other grounds as recognized in *Mattel, Inc. v. Walking Mountain*
2    *Productions*, 353 F.3d 792, 810 n. 19 (9th Cir. 2003); see also, e.g., *GoTo.com, Inc. v. Walt*
3    *Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (reciting the eight *Sleekcraft* factors).

4        The Ninth Circuit has adjusted the *Sleekcraft* factors somewhat for use in celebrity-based
5    infringement actions, explaining that in such cases "the term 'mark' applies to the celebrity's
6    persona, the 'strength' of the mark refers to the level of recognition that the celebrity has among
7    the segment of the public to whom the advertisement is directed, and the term 'goods' concerns
8    the reasons for or source of the celebrity's fame." *Downing v. Abercrombie & Fitch*, 265 F.3d
9    994, 1007 (9th Cir. 2001). Thus, in celebrity cases, the eight factors are "(1) the level of
10   recognition that the [celebrity] has among the segment of the society for whom the [opposing
11   party's] product is intended; (2) the relatedness of the fame or success of the [celebrity] to the
12   [opposing party's] product; (3) the similarity of the likeness used by the [opposing party] to the
13   actual [celebrity]; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree
14   of purchaser care; (7) [the opposing party's] intent [in] selecting the [celebrity]; and (8) likelihood
15   of expansion of the product lines." *Id.* at 1007-08.

16       Under either formulation, although all factors are properly considered, they are not
17   necessarily of equal importance, nor do they necessarily apply in every case. *Id.* at 1008; see
18   also, e.g., *Eclipse Associates Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990)
19   ("The Ninth Circuit enumerated likelihood of confusion tests as helpful guidelines to the district
20   court. These tests were not meant to be requirements or hoops that a district court need jump
21   through to make the determination. Our court has never articulated specific factors that a district
22   court must recite and apply, instead, we have identified a non-exclusive series of factors that are
23   helpful in making the ultimate factual determination").

24       Weighing these factors, the court concludes that they favor a finding that EC Ltd.'s use
25   of the Einstein mark creates a likelihood of confusion among "reasonably prudent customers."
26   First, use of the term "Einstein" evokes the universally familiar figure of Albert Einstein, who
27   remains associated in popular culture with attributes such as genius or high intelligence. EC
28   Ltd.'s advertising materials demonstrate that it has made an effort to play on of this association

in marketing plaintiffs' lip care products; promotional materials state, for example, that the products are the "intelligent" choice.  Insofar as Baby Einstein, LLC – which holds a valid license to use the "Einstein" mark from HUJ – also develops, markets, and sells body and skin care products, EC Ltd.'s representations may confuse consumers or lead consumers to assume that EC Ltd.'s products are Baby Einstein's.[35]  Although there is no evidence of actual confusion in the record, these facts are sufficient to establish a likelihood of confusion here.

Consequently, the court concludes that defendant has adequately stated trademark infringement, false endorsement, and unfair competition claims.

### (b)    Trademark Dilution

In order to prevail on its federal trademark dilution counterclaim under 15 U.S.C. § 1125(c)(1), defendant must show (1) that its Einstein marks are famous; (2) that plaintiffs made commercial use of the mark in commerce; (3) that this use began after defendant's Einstein marks became famous; and (4) that plaintiffs' use of the mark dilutes the quality of defendant's mark by diminishing the capacity of the mark to identify and distinguish goods and services.  See, e.g., *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1315, 1324 (9th Cir. 1998) (enumerating the elements of a 15 U.S.C. § 1125(c)(1) trademark dilution claim); see also, e.g., *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) ("In order to prove a violation, a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment" (footnote and

---

[35]As further evidence of EC Ltd.'s intend to confuse consumers, HUJ cites the fact that it served two requests for admissions ("RFAs") on EC Ltd., one in November 2008 and the second in January 2009.  EC Ltd. did not respond to either RFA.  HUJ argues that EC Ltd. has thus conceded, *inter alia*, that it has "engaged in the unauthorized use of the identity of Albert Einstein for the purposes of advertising and selling goods," and that it has "attempted to associate [its] products with the identity of Albert Einstein."  (Waller Decl., Exh. 6 (Jan. 2009 RFA), Nos. 70 & 72.)

1   citations omitted)).[36]  Defendant's state law trademark dilution claim under California Business

2   and Professions Code § 14330 "is subject to the same analysis as its federal claim."  *Panavision*,

3   141 F.3d at 1324.  "Neither federal law nor state law requires a showing of competition or

4   likelihood of confusion to succeed on a dilution claim."  *Jada Toys, Inc.*, 518 F.3d at 634.  The

5   contested mark, however, must be identical or nearly identical to the protected mark.  *Id.*

6        A review of the factual allegations in the counterclaim – and admitted by EC Ltd. by

7   default – shows that they suffice to plead trademark dilution under both state and federal law.  In

8   his last will and testament, Einstein transferred all right, title and interest to any publicity rights

9   in his name and likeness, service marks and trademarks to HUJ prior to his death in 1955.  Since

10  that time, HUJ has licensed the Einstein trademarks and publicity rights to various well-known

11  companies, including Apple Computer, Bell Atlantic, Disney, IBM, Panasonic, Xerox, Johnson

12  & Johnson, Unilever, National Geographic, Pfizer Pharmaceuticals, and others.[37]  In their

13  complaint, plaintiffs conceded that they began using the Einstein mark in 2005, long after HUJ's

14  Einstein trademarks had become famous.  Moreover, EC Ltd. adopted a nearly identical mark that

15  wholly incorporated the word "Einstein" and began using it in a manner that implied an

16  association with Albert Einstein.  The court credits HUJ's contention that such activities diminish

17  the distinctiveness of HUJ's famous Einstein trademarks.  Defendant, therefore, has pleaded

18  adequate trademark dilution claims.

19              **(c)    Right of Publicity**

20        In California, "the right of publicity is both a statutory and a common law right."  *Comedy*

21

22

23  [36]The *Jada Toys* court explained: "The prior version of the Federal Trademark Dilution

24  Act ('FTDA'), 15 U.S.C. § 1125(c) (2000) . . . required a showing of actual dilution.  The actual
    dilution requirement was a product of the Supreme Court's decision in *Moseley v. V Secret*

25  *Catalogue, Inc.*, 537 U.S. 418, 433, . . . (2003), where the Court held that the federal dilution
    statute required a showing of actual dilution.  However, since that time the FTDA has been

26  amended so as to require only a likelihood of dilution to succeed.  Trademark Dilution Revision
    Act of 2006 ('TDRA'), Pub.L. No. 109-312 § 2(1), 120 Stat. 1730."  518 F.3d at 634 n. 2.

27  [37]Counterclaim, ¶ 11; Waller Decl., ¶ 11 ("The licenses cover a broad array of goods and

28  services in many classes").

1  *III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 391 (2001).  As the basis for its state

2  law right of publicity counterclaim, HUJ relies on California Civil Code § 3344.1(a), which

3  provides in relevant part: "Any person who uses a deceased personality's name, voice, signature,

4  photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes

5  of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services,

6  without prior consent . . . shall be liable for any damages sustained by the person or persons

7  injured as a result thereof." CAL. CIV. CODE § 3344.1(a); see also, e.g., *Comedy III Productions*,

8  25 Cal.4th at 395 ("We therefore give effect to the plain meaning of the statute: it makes liable

9  any person who, without consent, uses a deceased personality's name, voice, photograph, etc.,

10  either (1) 'on or in' a product, or (2) in 'advertising or selling' a product.  The two uses are not

11  synonymous: in the apt example given by the Court of Appeal, there is an obvious difference

12  between 'placing a celebrity's name on a "special edition" of a vehicle, and using that name in

13  a commercial to endorse or tout the same or another vehicle'" (citation omitted)).

14      To prevail on a common law right of publicity claim, the movant must show that the

15  opposing party used the public identity (i.e., name or likeness) at issue, that it appropriated the

16  identity to its advantage, commercial or otherwise, without consent, and that injury resulted.  See,

17  e.g., *Browne v. McCain*, 611 F.Supp.2d 1062, 1069 (C.D. Cal. 2009) ("In order to state a claim

18  under California's common law right of publicity, a plaintiff must show '(1) the defendant's use

19  of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's

20  advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury'" (citations

21  omitted)).

22      The factual allegations in HUJ's counterclaim – and admitted by virtue of EC Ltd.'s default

23  – suffice to state an actionable claim for relief.  HUJ has established that it owns rights of

24  publicity in Albert Einstein's name, likeness, and identity.  It alleges that EC Ltd. used Einstein's

25  name on lip care products and to advertise and sell those products without its consent.  Finally,

26  it alleges that in so doing, EC Ltd. infringed upon and damaged HUJ's property rights in the

27  Einstein name.

28

1          **(d)    Conclusion Regarding Second and Third *Eitel* Factors**

2          Having reviewed the various counterclaims, the court concludes that the second and third

3    *Eitel* factors favor entry of default judgment against EC Ltd. on defendant's trademark

4    infringement, false endorsement, unfair competition, trademark dilution, and right of publicity

5    claims.

6                  **3.    The Sum of Money at Stake**

7          The fourth *Eitel* factor balances "the amount of money at stake in relation to the

8    seriousness of the [opposing party's] conduct."  *Pepsico*, 238 F.Supp.2d at 1175; see also *Eitel*,

9    782 F.2d at 1471-72.   Although defendant originally sought compensatory damages, treble

10   damages, costs and attorneys' fees, its motion for default judgment seeks only a permanent

11   injunction and costs of suit.  This factor, therefore, weighs in favor of granting the motion.

12                  **4.    Possibility of Dispute**

13         The next *Eitel* factor considers the possibility that material facts are disputed.  *Pepsico*, 238

14   F.Supp.2d at 1177; *Eitel*, 782 F.2d at 1471-72.  Because EC Ltd.'s default has been entered, there

15   is no dispute regarding the material facts.  See, e.g., *Pepsico*, 238 F.Supp.2d at 1177 ("Upon

16   entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to

17   damages," citing *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

18   This *Eitel* factor, therefore, also favors the entry of default judgment.

19                  **5.    Possibility of Excusable Neglect**

20         The sixth *Eitel* factor considers whether the default was the result of excusable neglect.

21   *Pepsico*, 238 F.Supp.2d at 1177; *Eitel*, 782 F.2d at 1471-72.  As discussed at length, EC Ltd. is

22   a suspended California corporation that has taken no affirmative steps to restore its corporate

23   status and that failed to retain counsel despite the court's express warning that it could not proceed

24   *pro se*.  EC Ltd. has been afforded ample opportunity to defend this action.  It has chosen not to

25   do so, instead ignoring its lawyers' advice as well as court orders.  There is thus no possibility

26   of excusable neglect, and this factor weighs in favor of entry of default judgment.

27                  **6.    Policy Favoring Decisions on the Merits**

28         "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782

                                                    17

1    F.2d at 1472.  The fact that Rule 55(b) has been enacted, however, indicates that "this preference,

2    standing alone, is not dispositive."  *Pepsico*, 238 F.Supp.2d at 1177 (quoting *Kloepping*, 1996

3    WL 75314 at *3).  Rule 55(a) allows a court to decide a case before the merits are heard if the

4    opposing party fails to appear and defend.  See *Pepsico*, 238 F.Supp.2d at 1177 ("Defendant's

5    failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not

6    impossible").  Since EC Ltd. failed to respond to defendant's counterclaims, the seventh *Eitel*

7    factor does not preclude entry of default judgment against it.

8               **7.    Conclusion Regarding the *Eitel* Factors**

9         All of the *Eitel* factors are neutral or weigh in favor of the entry of default judgment.

10   Consequently, the court finds it appropriate to grant HUJ's motion for default judgment against

11   EC Ltd.

12          **D.    The Character and Amount of Defendant's Recovery**

13        As noted, in HUJ's motion for default judgment, it seeks entry of a permanent injunction

14   against EC Ltd.  15 U.S.C. § 1116(a) vests the district court with "power to grant injunctions,

15   according to principles of equity and upon such terms as the court may deem reasonable, to

16   prevent the violation of any right" of a trademark owner.  A party seeking a permanent injunction

17   must satisfy a four-factor test before a court can grant such relief.  See *eBay, Inc. v.*

18   *MercExchange, LLC*, 547 U.S. 388, 392-93 (2006) (explaining that the Supreme Court has

19   "consistently rejected invitations to replace traditional equitable considerations with a rule that an

20   injunction automatically follows a determination that a copyright has been infringed"); see also

21   *Reno Air Racing Association, Inc. v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006) (applying

22   "traditional equitable principles," under *eBay* in deciding whether to grant permanent injunction

23   in a trademark case).[38]  Thus, a party seeking a permanent injunction must demonstrate (1) that

24

25   _____

26        [38]Although the Ninth Circuit previously presumed irreparable injury upon a showing that
     plaintiff was likely to succeed on the merits of a trademark infringement claim, see, e.g., *El Pollo*
27   *Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003) (citing *GoTo.com*, 202 F.3d at 1205
     n. 4), this presumption can no longer be applied following the Supreme Court's decision in *eBay*.
28   See *eBay*, 547 U.S. at 392-93; *Reno Air Racing*, 452 F.3d at 1137-38.

it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) "that, considering the balance of hardships . . . , a remedy in equity is warranted"; and (4) that it is in the public's interest to issue the injunction. *eBay*, 547 U.S. at 391.

**1.    Whether Defendant Has Established Irreparable Injury and the Absence of an Adequate Remedy at Law**

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a [party's] continuing infringement. It is the remedy provided by federal and state trademark infringement statutes." *Sandlin*, 846 F.2d at 1180-81.  HUJ alleges that EC Ltd.'s use of the Einstein marks infringes its rights. Although EC Ltd. is suspended and has been ordered dissolved, this does not demonstrate that the relief HUJ seeks is moot.  Under California law, "[a] corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs [and] prosecuting and defending actions by or against it . . . ."  CAL. CORP. CODE § 2010(a).  Furthermore, "[n]o action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof." *Id.*, § 2010(b).

Although EC Ltd. was ordered dissolved in 2007, there is no evidence that it has, in fact, been dissolved.  Nor is there any indication that EC Ltd. intends to cease using the Einstein marks absent an injunction restraining it from doing so.  Therefore, there is no adequate remedy at law for EC Ltd.'s infringement of defendant's marks.  See, e.g., *Microsoft Corp. v. Atek 3000 Computer Inc.*, No. 06 CV 6403 SLT (SMG), 2008 WL 2884761, *5 (E.D.N.Y. July 23, 2008) ("[P]laintiff has demonstrated that it has no adequate remedy at law since 'there is no assurance in the record against defendant's continued violation of plaintiff's copyrights' and trademarks," quoting *Warner Brothers Entertainment, Inc. v. Carsagno*, No. 06 CV 2676 NG (RLM), 2007 WL 1655666, *6 (E.D.N.Y. June 4, 2007)).

The lack of an adequate legal remedy supports a finding that defendant will suffer irreparable injury if EC Ltd. is not permanently enjoined.  See *id.* (noting, in a trademark case where there was no indication that defendant would cease its infringing activity, that the irreparable injury requirement for a permanent injunction overlaps with lack of an adequate

1   remedy at law, citing *Northwestern National Insurance Co. of Milwaukee Wisconsin v. Alberts*,

2   937 F.2d 77, 80 (2d Cir. 1991) (making a similar point in the context of a preliminary

3   injunction)); see also, e.g., *Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2008

4   WL 4531371, *3 (N.D. Ill. May 22, 2008) (noting, in a patent case, that "[c]onsideration of [the

5   inadequate legal remedy factor] overlaps considerably with that of irreparable injury, in that an

6   inadequate remedy at law can cause irreparable harm").

7       Although, post-*eBay*, a court may no longer presume irreparable injury in a trademark case

8   from the bare fact of liability, the injury caused by the presence of infringing products in the

9   market – i.e., lost profits and customers, as well as damage to goodwill and business reputation

10  – will often constitute irreparable injury.  See, e.g., *Atek 3000 Computer Inc.*, 2008 WL 2884761

11  at *5 (applying *eBay* in deciding a request for a permanent injunction restraining trademark

12  infringement, where there had been a finding of likelihood of confusion, and concluding that

13  plaintiff had demonstrated irreparable injury because it had "established that defendant committed

14  copyright and trademark infringement, and that there [was] no reason to conclude that defendant

15  ha[d] or [would] cease its infringing acts because it continued infringing plaintiff's copyrights and

16  trademarks despite being notified of its infringement").

17      By demonstrating that EC Ltd. has used and could continue to use defendant's marks and

18  that customer confusion, damage to reputation, and lost profits are likely to result, defendant has

19  sufficiently established that it has and will continue to suffer serious harm if an injunction does

20  not issue.  See, e.g., *Microsoft Corp. v. Evans*, No. 1:06 CV 01745 AWI (SMS), 2007 WL

21  3034661, *12 (E.D. Cal. Oct. 17, 2007) ("Plaintiff [seeking permanent injunction] has already

22  shown actual success on the merits because the complaint states a claim for infringement, and

23  Defendant has defaulted; further, Plaintiffs have alleged that unless restrained, Defendant will

24  continue to cause irreparable injury for which there is no full monetary compensation.  This is

25  sufficient for a permanent injunction"); *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219

26  F.R.D. 494, 502 (C.D. Cal. 2003) ("The Court finds that the proposed injunctive relief is

27  appropriate because the claims otherwise warrant an injunction, and Defendant, though well aware

28  of serious claims brought against it, has chosen to ignore this lawsuit.  Failure to grant the

1   injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm").

2   **2.      Whether the Balance of Hardships Favors a Permanent Injunction**

3   There is no evidence that EC Ltd. would suffer any hardship from entry of a permanent

4   injunction; rather, such an injunction would merely require compliance with the Lanham Act. By

5   contrast, as noted, defendant will suffer irreparable harm if an injunction is not granted.

6   Accordingly, the balance of harms favors entry of a permanent injunction.

7   **3.      Whether the Public Interest Favors a Permanent Injunction**

8   In trademark infringement claims, the public interest is "the right of the public not to be

9   deceived or confused." *AT&T Corp. v. Vision One Security Systems*, No. 95-0565-IEG (BTM),

10   1995 WL 476251, *7 (S.D. Cal. July 27, 1995) (citation omitted). "Where . . . concurrent use

11   of [a party's] trademark without authorization is likely to cause confusion, the public interest is

12   damaged by the . . . use." *Id.*; see also, e.g., *Atek 3000 Computer Inc.*, 2008 WL 2884761 at

13   *5-6 ("[T]he public interest lies in the enforcement of the principles recognized by Congress in

14   creating the [Copyright and Lanham] Acts, especially the prevention of consumer confusion").

15   This factor, therefore, also favors entry of a permanent injunction.

16   Because all four *eBay* factors weigh in favor of entry of an injunction, defendant is entitled

17   to a permanent injunction against EC Ltd.

18

19   **III.   CONCLUSION**

20   For the foregoing reasons, the court grants defendant's motion for entry of default

21   judgment and permanent injunction against EC Ltd. EC Ltd.'s affirmative claims are dismissed

22   with prejudice. Defendants are directed to submit their bill of costs within fifteen days of the date

23   of this order.

24

25   DATED: December 21, 2009

26                                          MARGARET M. MORROW
                                            UNITED STATES DISTRICT JUDGE
27

28